# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

Kimberly G.,[1]

      **Plaintiff,**

v.

                                           **Civil Action No. 2:21-cv-45**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Kimberly G. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. Specifically, Plaintiff cites two errors. First, she claims that the Administrative Law Judge ("ALJ") failed to properly evaluate the opinion evidence given by the state agency psychological consultants. Plaintiff also alleges that the ALJ erred in formulating Plaintiff's residual functional capacity ("RFC") by failing to account for Plaintiff's mild mental limitations. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

## I.   **PROCEDURAL BACKGROUND**

On January 18, 2019, Plaintiff initially filed for DIB and SSI. (R. 203-19). Plaintiff alleged disability beginning March 28, 2007,[2] based on seizures, hypothyroid, diabetes, encephalitis, mood disorder, problems swallowing, depression, short-term memory, and dysphagia. (R. 240). The state agency denied her application initially and on reconsideration. (R. 15). Plaintiff then requested an administrative hearing. Id. The hearing was held via telephone on June 4, 2020. (R. 32-62). Counsel represented Plaintiff at the hearing, and a vocational expert ("VE") testified. Id.

On August 5, 2020, the ALJ denied Plaintiff's claims for DIB and SSI, finding she was not disabled during the period alleged. (R. 26). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21). On November 17, 2020, the Appeals Council denied Plaintiff's request for review. (R. 1).

On January 21, 2021, Plaintiff filed her complaint in this court. Compl. (ECF No. 1). Plaintiff seeks judicial review of the Commissioner's final decision that she was not entitled to an award of DIB or SSI, claiming that "[t]he conclusions and findings of fact of the Defendant are not supported by substantial evidence and are contrary to law and regulation." Id. ¶ 8 (ECF No. 1, at 2). On September 22, 2021, Plaintiff moved for summary judgment. (ECF No. 18). Plaintiff argues that the case should be reversed or remanded because the ALJ failed (1) to properly evaluate the opinion evidence of state agency psychological consultants; and (2) to incorporate Plaintiff's mild mental limitations into Plaintiff's residual functional capacity and hypotheticals posed to the

---

[2] Plaintiff has alleged disability beginning March 28, 2007, but there are very few medical records until 2018. See (R. 37). At her administrative hearing, Plaintiff testified that her prior employment ended in 2007 because of conflicts stemming from her prioritizing her son's health concerns. (R. 41). The court considers these discrepancies a credibility concern.

VE. Pl.'s Mem. Supp. Social Security App. ("Pl.'s Mem.") (ECF No. 19, at 1). On October 22, 2021, the Commissioner opposed Plaintiff's motion and moved for summary judgment. (ECF No. 21). The Commissioner argues that (1) the ALJ's decision that Plaintiff's limitations were non-severe is supported by substantial evidence; and (2) the ALJ was not required to incorporate Plaintiff's mild limitations in her residual functional capacity. Def.'s Mem. Supp. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 22, at 1-3). Plaintiff replied. (ECF No. 23). After a review of the record, this Report considers each of these arguments.

## II.   FACTUAL BACKGROUND

Plaintiff was born on September 4, 1964, and at the time of the ALJ's decision, she was fifty-five years old. (R. 63). Plaintiff met the insured status requirements under the Social Security Act until December 31, 2012. (R. 15-16). She has not engaged in substantial gainful activity since March 28, 2007, the alleged onset date. (R. 17). She has a high school education, and she has reported past work as a cleaner, office assistant, receptionist, and temporary worker. (R. 241-42).

### A.   Plaintiff's Mental Health Treatment and Medical Findings

Plaintiff's arguments in this court do not require an extensive review of her medical history generally, only a review of that medical history concerning her current mental health impairments.

#### 1.   Mental Health Treatment

In July 2018, Plaintiff established care with the Internists of Churchland, with her chief complaint being low back pain. (R. 619). She reported at that time that she had been diagnosed with postpartum depression twelve years previously, and that citalopram (generic for Celexa) was "working well for her." Id. Her depression was stable, (R. 622), and her psychiatric examination was normal, (R. 621). Dr. Jessica Mason continued Plaintiff on citalopram. (R. 622).

In September 2018, Plaintiff was hospitalized for acute metabolic encephalopathy due to herpes encephalitis.[3] (R. 600). On October 4, 2018, she returned to Internists of Churchland and "report[ed] since hospitalization the anxiety has been overwhelming." (R. 489); see also (R. 492) ("Anxiety . . . [s]eems to have started after recent hospitalization . . . ."). She stated she had not taken Celexa for six months. (R. 489). During the appointment, she talked quickly and experienced crying spells. Id. Plaintiff was prescribed medication (Atarax). (R. 492). The following week, she returned for a follow-up appointment. (R. 481). She had stopped the Atarax between appointments because of adverse side-effects. Id. Plaintiff "attribute[d] worsening depression symptoms to her recent bought of herpes encephalitis." Id.

Between October 2018 and February 2019, Plaintiff experienced anxiety and depression without starting mental health treatment. In December 2018, she presented to the emergency department for an evaluation of depression after making a suicidal statement to her sister. (R. 468). She represented that she would start medication through her primary care physician "soon." (R. 469). Later that month, Dr. Margaret Stiles noted that Plaintiff was "struggling with significant anxiety," but had "not taken many medications recommended or prescribed to her recently because of concern about side effects." (R. 1006). Dr. Stiles encouraged Plaintiff to start on Celexa before an upcoming counseling appointment. (R. 1007). On January 22, 2019, Dr. Stiles noted that Plaintiff had a "labile mood with depression and anxiety, [but] she is still not on an antidepressant, [and] still has not seen psychiatry or a counselor. She has made phone calls and reached out, but still not being treated." (R. 1002). Later that month, Plaintiff presented to the emergency

---

[3] Encephalitis is an "inflammation of the brain." Encephalitis, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (31st ed. 2007). Herpes encephalitis is a particularly severe form of encephalitis caused by a herpesvirus and "involves fever, headache, seizures, stupor, and often coma, frequently with a fatal outcome." Id.

department after a possible seizure. (R. 1184). She was experiencing anxiety and suicidal ideation, and she had "been referred to Churchland psych," but she had "not started therapy yet." Id.

Plaintiff began therapy with Churchland Psychiatry in February 2019. (R. 1133). Her records note that her condition "started 9-2018" with her encephalitis, id., and her mental health exam showed anxiety and depression "since encephalitis," (R. 1134). She was scheduled for individual psychotherapy. (R. 1135). During therapy in March 2019, Plaintiff's symptoms included anxiousness, depressed mood, memory problems, non-stop talking, and tearfulness. (R. 1132). In April 2019, Plaintiff was experiencing anxiousness, depressed mood, decreased energy, suicidal ideation "at times" (which was "better"), tearfulness, and "speeded speech." (R. 1131). Her only medication was an antacid. Id. Psychotherapy notes from May 2019 record anxiousness as Plaintiff's "main prob[lem]," but also show depressed mood, disruption of thought process and content (specifically "talks fast"), memory problems, and tearfulness. (R. 1536). A mental status examination in July 2019 showed a depression diagnosis and reported that Plaintiff was anxious, had impaired recent memory, and spoke quickly, but also that she had adequate concentration, good judgment, logical thought processes, and no suicidal ideation. (R. 1534-35). She was prescribed Paxil. (R. 1535). At her last therapy session in September 2019, Plaintiff reported that "Paxil help[ed]" with the depression. (R. 1533). She reported that she had "good & bad days" and was "still . . . battling depression," but was "generally better." Id. Her husband said she was "80% better." Id. Plaintiff did not seek further treatment for her mental health symptoms after this appointment. (R. 19).

Outside of her psychotherapy treatment, Plaintiff's other treatment records reflect her mental health status during this timeframe. Plaintiff's emergency room records from March 2019, shortly after beginning psychotherapy, are negative for depression and suicidal ideation, (R. 1167),

and show normal psychiatric exams, (R. 1168, 1172). In April 2019, two reviews of her symptoms were negative for depression and memory loss. (R. 1163, 1246-47). On April 23, 2019, Dr. Stiles recorded that Plaintiff was "still not on an antidepressant," but she was "following up with a counselor on a regular basis," which was "helping some as far as her anxiety." (R. 1260). Her mood was "more normal" and "less anxious," id., and Dr. Stiles observed that Plaintiff "does seem to be handling her anxiety somewhat better at this point," (R. 1261). In May 2019, her providers noted that she "had some memory issues and also speech concerns, but they seem to be improving nicely." (R. 1436). By October 2019, Plaintiff's medical records do not record depression or anxiety as active medical problems. See (R. 1401) (noting "normal"); (R. 1543) (listing depression as "past medical history"); (R. 1544) (noting "appropriate affect"). In February 2020, Plaintiff denied depression and memory loss. (R. 1499).

### 2.    Administrative Medical Findings

On March 21, 2019, Joseph Leizer, Ph.D., a state agency psychological consultant, reviewed the existing record. (R. 76). He found that Plaintiff had "severe" depression and somatic symptom disorders. (R. 69). Dr. Leizer found that Plaintiff had "moderate" limitations in her ability to understand, remember, and apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (R. 70). His explanation included that Plaintiff had been diagnosed with conversion disorder and had been noted to have impaired concentration and attention. (R. 70, 74).

On June 27, 2019, Julie Jennings, Ph.D., another state agency psychological consultant, reviewed the existing record. (R. 102). She found that Plaintiff had "severe" depressive impairments that resulted in a mild limitation in her ability to understand, remember, or apply information, and moderate limitations in her ability to interact with others; concentrate, persist, or

maintain pace; and adapt or manage oneself. (R. 101). Dr. Jennings further noted Plaintiff's conversion disorder and found that could "understand, carry out, and remember simple instructions and occasionally understand and remember detailed ones." (R. 106). She could also make "judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions." Id.

## B.   Plaintiff's Function Report

On March 2, 2019, Plaintiff completed an adult function report. (R. 263-70). She reported that either her husband cooks or her meals are acquired through Meals on Wheels. (R. 264).

## C.   Testimony Before the ALJ

The ALJ questioned Plaintiff at the hearing on June 4, 2020. (R. 38-55). The ALJ also heard testimony from the VE, Linda Augins. (R. 59).

### 1.   Plaintiff's Testimony

On direct questioning by the ALJ, Plaintiff testified that on a typical day, she drives the family car to take her husband to work. (R. 39). She stated that she occasionally shops on her drive back. (R. 42-43). She testified that she generally sits once she returns home, but then prepares breakfast for her son. (R. 43). During the day, she acknowledged that she generally cares for the dog and does household jobs. (R. 44). She stated that she does yardwork. (R. 45). She testified that she sits intermittently during these chores, id., but that her hip and back pain was the biggest reason that she could not work, (R. 48-51). Regarding anxiety, Plaintiff said that 2018 was "tough" and that she was on medication for it. (R. 51). She testified that she had been "doing fairly good" but struggled when her husband returned to work. (R. 52). She stated that she called her physician two weeks before the hearing to resume treatment and verify insurance coverage.

Id. She felt that stress aggravated her anxiety and that she did not handle crises as well as previously. (R. 52-53).

### 2.    Testimony from the VE

In her testimony, the VE characterized Plaintiff's prior receptionist work as semi-skilled, SVP, and sedentary. (R. 59). The ALJ's hypothetical for the VE posited a person with the same age, education, and work experience as Plaintiff with the following limitations:

> [L]imited to light exertion, as it's defined by the Social Security regulations. The standing and walking would be limited to four hours out of an eight hour work day. This individual should only occasionally bend, stoop, or crouch.

Id. The VE testified that jobs would be available to such a person. Id. The ALJ further restricted the hypothetical to an individual "limited to performing routine, repetitive tasks within these jobs." (R. 60). The VE that jobs would be available to such a person, identifying office helper (DOT 239.567-010) with 17,000 jobs nationally; mail sorter (DOT 209.687-026), with 23,000 jobs nationally; and postage machine operator (DOT 208.685-026) with 26,000 jobs nationally. Id. Following an additional query by the ALJ, the VE testified that these positions would still be available if "the individual is limited to sedentary exertion, with standing and walking being limited to no more than five to 10 minutes at a time." Id. The VE also testified that more than fifteen percent of time off-task would eliminate all jobs available in the national economy. Id.

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison

Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

Plaintiff's brief identifies two errors in the ALJ's decision that she claims warrant remand. She contends that the ALJ's findings are unsupported by substantial evidence because he failed to find her mental limitations severe and because the ALJ did not incorporate her mild mental limitations into the RFC determination. See Pl.'s Mem. (ECF No. 19, at 1). As explained below, this Report finds no error in the ALJ's analysis, including the ALJ's finding that Plaintiff's impairments were not severe because they did not meet the durational requirement. Likewise, the ALJ's consideration of the opinion evidence from state agency psychological consultants ("consultants") is sufficient to permit judicial review. The Report also finds no error in the ALJ's RFC formulation, including his decision not to account for Plaintiff's mild mental limitations.

Accordingly, this Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

## A.  Framework for SSA Disability Evaluation

Title XVI of the Act provides SSI benefits to "financially needy individuals who are aged, blind, or disabled regardless of their insured status." Bowen v. Galbreath, 485 U.S. 74, 75 (1988) (citing 42 U.S.C. 1382(a)).  As relevant here, the Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A)); accord 20 C.F.R. § 416.905(a).  An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy.  See § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. § 416.920(a)(4).  Specifically, the regulations direct the ALJ to answer the following five questions:

1.  Is the individual involved in substantial gainful activity?

2.  Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3.  Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4.  Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5.  Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes disability. The claimant bears the burden of proof during the first four steps. If the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 416.920(a)(3); 416.920b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.      The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date until the hearing date. (R. 17). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status-post encephalitis, and L3-4 spondylolisthesis. Id. At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combinations of impairments that met or medically equaled the severity of one of the listed impairments. (R. 21). The ALJ developed a finding regarding Plaintiff's RFC. (R. 21). He determined Plaintiff was able

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) and [§] 416.967(b)
> except the claimant can stand and walk for 4 out of 8 hours, occasionally bend,
> stoop, or crouch.

11

Id.  At step four, the ALJ concluded that Plaintiff could perform her past relevant work as a receptionist. (R. 25).  The ALJ cited VE testimony that "if the claimant was limited to light work with all other limitations the same, she could still perform the job of receptionist." Id.  At step five, the ALJ ultimately found that Plaintiff was not disabled. Id.

**C.     The ALJ Did Not Err in Determining that Plaintiff's Mental Impairments Were Non-Severe Based on Failure to Satisfy the Durational Requirement.**

Plaintiff's appeal focuses primarily on the ALJ's step-two finding that Plaintiff's mental impairments were non-severe.[4] See Pl.'s Mem. (ECF No. 19, at 8-16).  A claimant is only entitled to disability benefits if the medically determinable impairment (1) is severe, and (2) meets the durational requirement. 20 C.F.R. § 404.1505(a).  The ALJ found Plaintiff's mental impairments were non-severe, noting that "[t]he record does not establish that these impairments are either within the relevant period, meet the durational requirement, are uncontrolled despite the use of medication or cause any significant functional limitations that would have more than a minimal effect on the claimant's ability to perform basic work activities." (R. 20).  Although couched in other terms, Plaintiff asserts that her mental impairments are severe, and thus should have been incorporated into the RFC. See Pl.'s Mem. (ECF No. 19, at 8-16).  After considering the ALJ's opinion and the record as a whole, I conclude that the ALJ's finding that Plaintiff's mental impairments were non-severe is supported by substantial evidence.

---

[4] Plaintiff argues that "[t]he RFC determination lacks substantial evidence because the ALJ improperly evaluated the opinion evidence [of] state agency psychological consultants Drs. Leizer and Jennings." Pl.'s Mem. (ECF No. 19, at 8).  I agree that Plaintiff is challenging the ALJ's determination that her mental impairments are non-severe and thus did not need to be explicitly addressed by her RFC. See Camille B. v. Kijakazi, No. 20-cv-262, 2021 WL 4205341, at *5 (E.D. Va. Sept. 15, 2021) (finding that it was "incorrect" that "an ALJ must always include all limitations she finds credible in her RFC, even if they arise from a non-severe impairment"); Kimberly L. v. Kijakazi, No. 20-cv-536, 2021 WL 4434323, at *18 (E.D. Va. Sept. 9, 2021) ("[T]he ALJ was not obligated to consider plaintiff's non-severe impairments in the RFC determination . . . .").  I therefore discuss her challenges to the ALJ's assessment of the consultants' opinions as only a subset of that argument. See Def.'s Opp'n (ECF No. 22, at 13).

1.    **The ALJ's Finding that Plaintiff's Mental Impairments Did Not Satisfy the Durational Requirement Is Supported by Substantial Evidence.**

A claimant is only entitled to disability benefits if the medically determinable impairment meets the "duration requirement"—that is, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The ALJ found that Plaintiff's "mental health impairments cannot be shown to have last[ed] 12 months." (R. 19).  There is substantial evidence to support the ALJ's finding that Plaintiff's depression and anxiety lasted less than one year, beginning with her hospitalization for encephalitis in September 2018 and resolving by September 2019.

i.    **Substantial Evidence Shows that Plaintiff's Encephalitis Triggered Her Mental Impairments in September 2018.**

The ALJ's finding that Plaintiff's "encephalitis was the cause of her anxiety" is supported by substantial evidence. (R. 19).  Plaintiff was hospitalized for acute metabolic encephalopathy due to herpes encephalitis in September 2018.  (R. 600).  By October, Plaintiff was reporting overwhelming anxiety "since hospitalization" for encephalitis.  (R. 489); see also (R. 492) ("Anxiety . . . [s]eems to have started after recent hospitalization . . . .").  When Plaintiff began therapy with Churchland Psychiatry in February 2019, her providers noted that her condition "started 9-2018" with her encephalitis, (R. 1133), and her mental health exam showed anxiety and depression "since encephalitis," (R. 1134).  The ALJ noted Plaintiff's own report "that she cries often because the encephalitis caused her to have poor concentration and run on speech." (R. 19). Therefore, with multiple treatment records and providers crediting encephalitis with the inception of her depression and anxiety, the record amply supports the ALJ's choice to begin the durational clock in September 2018.

In support of her argument that her mental health impairment began earlier, Plaintiff relies heavily on her first record with the Internists of Churchland, which she characterizes as "show[ing]

that Plaintiff has been diagnosed with depression since at least July 2018," before her encephalitis hospitalization. Pl.'s Mem. (ECF No. 19, at 10). She also argues that the ALJ must explain why he considered her depression to start concurrently with her anxiety in September 2018. Pl.'s Reply (ECF No. 23, at 2). After reviewing the cited records closely, it is clear that any reference to depression before Plaintiff's encephalitis was of an entirely different nature. When she established care in July, Plaintiff complained primarily of low back pain, not depression. (R. 619). Her providers recorded her twelve-year-old diagnosis as one of postpartum depression. Id. Citalopram was "working well for her," id., her depression was stable, (R. 622), and her psychiatric examination was normal, (R. 621). Further, a diagnosis alone is legally insufficient to establish a severe disability. See Felton-Miller v. Astrue, 459 F. App'x 226, 229-30 (4th Cir. 2011). Plaintiff cites no medical evidence of contemporaneous limitations arising from her depression until after her September hospitalization. However, by October 2018, the nature of her depression had changed significantly, and Plaintiff experienced "worsening depression symptoms" that she "attribute[d] . . . to her recent bought of herpes encephalitis." (R. 481). Therefore, substantial evidence shows that Plaintiff's encephalitis triggered the mental impairments at issue here.

### ii.    Substantial Evidence Shows that Plaintiff's Mental Impairments Adequately Resolved by September 2019—Within One Year.

There is substantial evidence that Plaintiff's mental impairments had adequately resolved by September 2019—within a year after hospitalization. The ALJ observed that Plaintiff felt like "Paxil help[ed]," and that in September 2019, "she reported that she was reading more and her husband described her as 80% better." (R. 19). Further, Plaintiff "received no mental health treatment following her September 2019 appointment," and she failed to "appear for a scheduled consultative examination following the hearing." Id. The ALJ also noted Plaintiff's February 2020 examination when she denied depression and memory loss. Id. She also "generally

present[ed] with normal mood and affect as well as normal behavior." Id. Even if Plaintiff was "still . . . battling depression" to some degree, she reported that she was "generally better" by September 2019. (R. 1533). Other medical records after September 2019 also showed benign mental status findings. See, e.g., (R. 1401, 1543-44). The ALJ was thus justified in concluding that Plaintiff's mental impairments lasted less than one year.

Plaintiff argues that "[o]ne cannot assume Plaintiff was no longer impaired simply because she did not seek treatment following her September 2019 appointment, as absence of evidence is not necessarily evidence of absence."[5] Pl.'s Mem. (ECF No. 19, at 10). She relies on Testamark v. Berryhill for this contention, in which the Fourth Circuit observed that "[s]ymptoms of mental illness may wax and wane over the course of treatment . . . ." 736 F. App'x 395, 398 (4th Cir. 2018). However, that case examined a claimant's intermittent symptoms. Id. at 398-99. Here, Plaintiff's records show steady improvement, not waxing and waning symptoms; therefore, the ALJ could permissibly assign weight to Plaintiff's complete failure to seek mental health treatment after September 2019. Furthermore, after failing to seek treatment for five months, Plaintiff denied depression and memory loss in February 2020. (R. 1499).

### iii.   The ALJ's Durational Finding Was Not Infected by Cherry-Picking.

Lastly, Plaintiff asserts that the ALJ "cherry-picked evidence" regarding the durational requirement. Pl.'s Mem. (ECF No. 19, at 10). Cherry-picking occurs when an ALJ "locate[s] a single treatment note that purportedly undermines [the treatment provider's] overall assessment of

---

[5] Plaintiff attempts to justify her failure to seek treatment after September 2019 at least partially on "[t]he emergence of the COVID-19 pandemic." Pl.'s Reply (ECF No. 23, at 2). However, Plaintiff's only relevant hearing testimony was that "[w]ith COVID, and even before that, [she] didn't go" out very much in the evenings. (R. 47). She has provided no evidence that the pandemic inhibited any actual efforts she made to seek treatment. In fact, she failed to attend a scheduled consultative exam following the hearing. (R. 19).

[the plaintiff's] functional limitations . . . ." Hudson v. Colvin, No. 12-cv-269, 2013 WL 6839672, at *8 (E.D.N.C. Dec. 23, 2013) (quoting Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011)); see also Arakas v. Comm'r, SSA, 983 F.3d 83, 99, 102 (4th Cir. 2020) (finding that the ALJ errs when misstating or mischaracterizing facts). Specifically, Plaintiff accuses the ALJ of discounting her July 2018 treatment record. Pl.'s Mem. (ECF No. 19, at 10). However, this solitary record (recording a different type of depression diagnosed twelve years earlier) does not undermine the ALJ's significant analysis of her more recent medical history.

The ALJ could properly find that "the longitudinal evidence of record does not support [Plaintiff's] allegations" because—as discussed above—there is significant evidence that her mental impairments began after her encephalitis. (R. 24); see, e.g., (R. 489, 492, 1133-34). The ALJ cited more than a single treatment note for the proposition that Plaintiff's mental impairments had resolved by September 2019, and instead connected multiple records to show a continued pattern of improvement. See (R. 19). Lastly, any records between September 2018 and September 2019, such as Plaintiff's suicidal ideation in early 2019, see (R. 1131, 1135, 1184), have no impact on duration, and the ALJ was free to disregard them on this question. Therefore, the ALJ did not cherry-pick among Plaintiff's treatment records on the duration question, and his finding that Plaintiff's mental impairments did not satisfy the durational requirement is supported by substantial evidence.

## 2. The ALJ Appropriately Evaluated the Consultants' Opinions for Persuasiveness.

Plaintiff argues that the ALJ improperly evaluated the consultants' prior administrative medical findings. Pl.'s Mem. (ECF No. 19, at 8-9). After reviewing Plaintiff's records, both Dr. Leizer and Dr. Jennings rendered opinions that Plaintiff had "severe" depression and "moderate" limitations. (R. 69-70, 101). The ALJ rejected these opinions as unpersuasive, (R. 20), which

Plaintiff contends is error, Pl.'s Mem. (ECF No. 19, at 9).  Because the ALJ appropriately evaluated the consultants' opinions as required by the SSA rules,[6] remand is not required.

First—and most importantly—an ALJ is not required to adopt the consultants' opinions. 20 C.F.R. § 404.1520c(a).  Plaintiff argues that Dr. Leizer's and Dr. Jenning's opinions of her limitations require accommodation in her RFC[7] and would render her disabled.[8]  Pl.'s Mem. (ECF No. 19, at 15).  However, those opinions are not the ALJ's.  The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ."  20 C.F.R. § 404.1520c(a).  Instead, the ALJ considers their overall "persuasiveness," id., and while the ALJ may consider many factors in evaluating persuasiveness, he or she must explain only "the most important factors" of "supportability" and "consistency," id. § 404.1520c(b)(2).

The ALJ rejected the consultants' opinions as unpersuasive because "the record does not support a finding that the claimant's mental impairment met the durational requirement."  (R. 20). Both consultants' opinions are silent on duration.  Dr. Liezer evaluated the record as it existed in

---

[6] On January 18, 2017, the SSA adopted new rules for considering medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c. The new rules apply to all claims filed after March 27, 2017. Id. Because Plaintiff filed her claim on January 18, 2019, (R. 203), the new rules apply.

[7] In fact, Plaintiff argues that the ALJ ran afoul of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), by not properly accounting for the consultants' determinations that she had moderate limitations in concentration, persistence, or pace. Pl.'s Mem. (ECF No. 19, at 15). However, Mascio is inapposite. In that Fourth Circuit case, the ALJ—not the consultants—had credited plaintiff's moderate limitations earlier in the five-step sequential evaluation process. Mascio, 780 F.3d at 638 (emphasis added). The ALJ in this case did not so credit Plaintiff's allegations, and thus he did not need to "account for [Plaintiff's] limitation in concentration, persistence, or pace." Id.

[8] Plaintiff argues that because the VE testified that all jobs would be eliminated if Plaintiff were off-task fifteen percent of the time, (R. 60), then the consultants' opinions of her limitations show that she is disabled, Pl.'s Mem. (ECF No. 19, at 15-16). However, Defendant correctly points out that neither consultant opined that Plaintiff would be off task for fifteen percent of the workday. Def.'s Opp'n (ECF No. 22, at 18 n.5).

March 2019, only six months after Plaintiff's encephalitis hospitalization. (R. 76). Dr. Jennings evaluated the record only a few months later. (R. 102). Therefore, neither could—or even attempted to—opine on whether Plaintiff's mental impairments lasted at least twelve months. The ALJ also reviewed later treatment records, which "were negative for depression and memory loss," that were unavailable to the consultants. (R. 20). An ALJ may "consider whether new evidence [the ALJ] receive[s] after the medical source made his or her . . . prior administrative finding makes the . . . . prior administrative finding more or less persuasive." 20 C.F.R. § 404.1520c(c)(5). Furthermore, as supportability evaluates the "relevan[ce of] the objective medical evidence" to the opinion rendered, an incomplete and dated medical record necessarily undermines the supportability of the consultants' opinions.[9] Id. § 404.1520c(c)(1). Therefore, the ALJ adequately analyzed the supportability of these opinions.

The ALJ also found that Dr. Leizer's and Dr. Jenning's opinions were inconsistent because Plaintiff was "independent with respect to daily activities." (R. 20). Plaintiff argues the ALJ did not identify specific daily activities or explain how those activities conflicted with the consultants' opinions, and therefore more explanation is needed to build a "logical bridge between the evidence and that rejection." Pl.'s Mem. (ECF No. 19, at 11) (citing Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016)). I disagree. There is sufficient evidence that Plaintiff engaged in daily independent activities such that the logical bridge is built. First, the ALJ identified Plaintiff's independent activities later in his opinion, including that Plaintiff "reported that she drives, shops in stores, prepares food, cares for her dog, does laundry, unloads the dishwasher, and attends to her own personal care." (R. 25). An ALJ is not required to repeatedly identify the same evidence.

---

[9] Plaintiff expends significant effort addressing the supportability of the consultants' opinions at the time they were rendered, Pl.'s Br. (ECF No. 19, at 12-14), but does not address how the opinions were impacted by later treatment records reflecting Plaintiff's improvement.

See McCartney v. Apfel, 28 F. App'x 277, 279 (4th Cir. 2002).  More pointedly, no elaboration is necessary to understand the logical impact of these activities on the consistency and supportability of the consultants' opinions that Plaintiff was severely disabled.  Lastly, Plaintiff's own testimony is also relevant to this point because the ALJ may evaluate consistency against nonmedical as well as medical sources.  20 C.F.R. § 404.1520c(c)(2).

Plaintiff also challenges the ALJ's characterization of her activities as independent because he "failed to capture the qualifiers Plaintiff placed on certain activities." Pl.'s Mem. (ECF No. 19, at 11).  Plaintiff relies on Brown v. Commissioner, SSA, in which the Fourth Circuit criticized the ALJ's failure to "acknowledge the limited extent of [daily] activities as described by [the plaintiff.]" 873 F.3d 251, 269 (4th Cir. 2017).  There, the ALJ made inaccurate and unreasonable credibility determinations, such as relying on ill-defined treatment notes to insist that the plaintiff regularly exercised when the plaintiff denied all exercise other than walking. Id. at 270.  Here, the ALJ did not cast aspersions on Plaintiff's credibility, but rather gave Plaintiff "the benefit of the doubt" in fashioning her RFC. (R. 25).  The ALJ also did not assert that Plaintiff was unlimited in her ability to perform these activities.   Therefore, Brown does not require special acknowledgment of qualifying language.

Furthermore, despite any qualifiers she might have given on examination by her attorney, Plaintiff testified that she performs many activities regularly without assistance.  The fact that Plaintiff and her husband own only one car does not detract from her ability to independently drive that car, which she stated she did every workday. (R. 42); see Pl.'s Mem. (ECF No. 19, at 12).  Neither does the fact that her husband's work location is only five to ten minutes away dimmish her consistent independent performance of this task. (R. 42); see Pl.'s Mem. (ECF No. 19, at 12).  Furthermore, even if Plaintiff's husband generally prepares her meals or they are obtained through

Meals on Wheels, (R. 264), Plaintiff still testified that she prepares breakfast for her son, (R. 43). To the extent Plaintiff qualified her activities in her testimony, those qualifications do not undermine the ALJ's use of her daily activities in evaluating the consistency of the consultants' opinions.

Lastly, Plaintiff challenges the ALJ's supportability evaluation based on cherry-picking. Pl.'s Reply (ECF No. 23, at 3). Plaintiff identified record evidence supporting Dr. Leizer's and Dr. Jenning's opinions that Plaintiff suffered from severe depression at the time they rendered their opinions. Pl.'s Mem. (ECF No. 19, at 12-14). However, this evidence does not address the relevant question in this court: whether "the claimant's mental impairment met the durational requirement." (R. 20). The ALJ's longitudinal review of the record included that Plaintiff was "80% better" by September 2019, (R. 1533), and that she failed to seek medical treatment after September 2019, (R. 19), as well as other evidence responsive to this question. Therefore, the consultants' opinions were just one form of evidence, and the ALJ appropriately evaluated their persuasiveness. See 20 C.F.R. § 404.1520c(a).

**D.    The ALJ Was Not Required to Incorporate Plaintiff's Mild Limitations in the RFC.**

Plaintiff's second claim argues that the ALJ erred by not incorporating Plaintiff's mild limitations into her RFC. Pl.'s Mem. (ECF No. 19, at 16). Specifically, Plaintiff asserts that "[w]here the ALJ imposed no mental limitations in the RFC despite having found a mild limitation in concentration, persistence, or pace and did not explain this inconsistency, remand is required." Id. However, despite Plaintiff's arguments, the ALJ's assessment in this case was supported by substantial evidence because the RFC sufficiently accounted for all of Plaintiff's limitations that genuinely affected occupational functions.

Plaintiff's mild limitations do not significantly limit her ability to work. When he determined that Plaintiff's mental impairments were non-severe, the ALJ evaluated four broad

functional areas and found that she had only mild limitations.  (R. 19-20).  Plaintiff does not argue

or cite evidence that the ALJ should have assigned greater restrictions to any of these functional

categories.[10]  See Pl.'s Mem. (ECF No. 19, at 16-17).  Furthermore, as discussed at length above,

the ALJ's findings that her mental limitations were non-severe is supported by substantial

evidence.  Therefore, Plaintiff's limitations by their nature have "no more than a minimal effect"

on her working ability.  SSR 85-28, 1985 WL 56856 (Jan. 1, 1985); (R. 16).

ALJs are not required to explain or incorporate functional limitations with de minimis

effect in RFCs.  The Fourth Circuit has indicated that moderate—not mild—limitations must be

either accounted for in the RFC or alternatively explained.  Mascio, 780 F.3d at 638.  This district

has routinely declined to extend this requirement to mild limitations.  See, e.g., Camille B. v.

Kijakazi, No. 20-cv-262, 2021 WL 4205341, at *5 (E.D. Va. Sept. 15, 2021); Eva L. v. Saul, No.

20-cv-0162, 2020 WL 5648324, at *17 (E.D. Va. Sept. 22, 2020).  As this court previously

summarized:

> Mascio did not provide that remand was required when the ALJ failed to give an
> explanation in the presence of mild limitations only.  While district courts within
> the Fourth Circuit appear divided as to whether an extension of Mascio's holding
> to address mild limitations is appropriate, in the undersigned's judgment such an
> extension is not an appropriate finding this Court should make.

Younger v. Berryhill, No. 18-cv-182, 2019 WL 3432771, at *5 & n.5 (E.D. Va. June 21, 2019)

(rejecting some "mildly persuasive authority" that extended the requirement in other districts),

adopted by 2019 WL 3451305 (E.D. Va. July 29, 2019).  I also see no reason to recommend

extending the requirement here.

---

[10] Other than her implied argument the ALJ should have adopted Dr. Leizer's and Dr. Jenning's findings
that she had a moderate limitation in concentration, persistence, and pace at the time of their evaluations.
See supra note 7.

As the Commissioner argues, limitations should be evaluated predominately on a case-by-case basis. Def.'s Opp'n (ECF No. 22, at 19).  Plaintiff argues that the ALJ must have included mental limitations in her RFC.  Pl.'s Reply (ECF No. 23, at 5).  However, the Fourth Circuit eschews "categorical rule[s]" for social security appeals, recognizing that even Mascio allowed an ALJ to alternatively explain why an RFC did not account for a moderate limitation.  Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020); cf. Biestek v. Berryhill, 139 S. Ct. 1148, 1157 (2019) ("Determining the substantiality of evidence . . . is case-by-case.").  Recommending that an ALJ categorically incorporate all mild limitations would infringe on the ALJ's ability to weigh the evidence and exercise discretion.

Furthermore, an ALJ's opinion should be read as a whole.  See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011).  The ALJ stated that, while developing Plaintiff's RFC, he considered whether Plaintiff's non-severe impairments in conjunction with other impairments could impact her capacity.  (R. 20, 21).  At the conclusion of his opinion, the ALJ noted that "more recent treatment notes indicate that [Plaintiff] was improving nicely and exhibited intact memory . . . ." (R. 24-25).  He felt that "the longitudinal evidence of record does not support [Plaintiff]'s allegations concerning the intensity, persistence, and limiting effect of her symptoms,"  (R. 24), and developed an RFC that "gives [Plaintiff] the benefit of the doubt, but still does not preclude her from working." (R. 25).  The ALJ thus adequately considered Plaintiff's mild limitations in light of her entire treatment record, and he was not required to meet the higher standard of incorporating those limitations into the RFC or explaining why he chose not to do so.

## V.    **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 21), DENY Plaintiff's Motion for Summary Judgment (ECF No. 18), and AFFIRM the Commissioner's finding of no disability.

## VI.    **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, <u>see</u> 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. <u>See</u> Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 7, 2021

23